FILED by __ D.C.

Oct 10, 2017

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. –MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
# 17-20713-CR-ALTONAGA/GOODMAN

CASE NO. _____

18 U.S.C. § 1349
18 U.S.C. § 1348
18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 1512(c)(2)
18 U.S.C. § 2
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(1)

UNITED STATES OF AMERICA

vs.

MYRON GUSHLAK and
YELENA FURMAN,
   a/k/a "ELENA FURMAN,"

     Defendants.

_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At times material to this Indictment:

<u>The Defendants</u>

1.    Defendant **MYRON GUSHLAK** was a Canadian citizen who maintained homes in the Cayman Islands and Miami Beach, among other places.

2.    Defendant **YELENA FURMAN**, a/k/a "Elena Furman," was a resident of New York, and acted as a promoter and shareholder for public companies.

The Securities Laws

3.      The U.S. Securities and Exchange Commission ("SEC") was an agency of the United States responsible for enforcing the securities laws, including the Securities Act of 1933, 15 U.S.C. § 77a *et seq.* ("Securities Act"), and the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* ("Exchange Act").   Regulations promulgated by the SEC defined and implemented the requirements of the statutes.   Companies filed periodic and annual reports with the SEC using the EDGAR electronic filing system.   These reports were available to the public over the internet.

4.      The Securities Act and the Exchange Act, and their implementing regulations, required that public filings contain specific disclosures or types of information.   Among the categories of information required to be disclosed by these laws was substantial information about the individuals who, in various ways, were deemed to control public companies.   SEC regulations also required that, "[i]n addition to the information expressly required to be included in a statement or report, there shall be added such further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they are made, not misleading."   17 C.F.R. § 240.12b-20.

5.      Under the Exchange Act, every issuer of securities was required to "make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer."   15 U.S.C. § 78m(b)(2)(A).

6.      In a "reverse merger," a private company acquired a majority of the shares of a public company, which was then merged with the purchasing entity.   The public company was required to report the terms of a reverse merger in a filing with the SEC.

7.      A "pump and dump" was a stock manipulation scheme where one or more individuals who controlled the purported free trading shares of a microcap company, fraudulently

inflated the share price and trading volume of the company through, among other things, manipulative trading techniques, false and misleading press releases, and paid stock promotions. When the company's share price reached desirable levels, the free trading shares were sold for substantial financial gain.

8.      A "straw CEO" was an individual who, in exchange for a promised fee, allowed his name to be listed as a chief executive officer and other positions on corporate paperwork and in public filings.   A "straw shareholder" was an individual who, in exchange for a promised fixed return, gave control of shares listed in his name to an undisclosed principal.

<u>Relevant Persons and Entities</u>

9.      Black Sea Oil, Inc. ("Black Sea Oil"), later known as Clearview Acquisitions, Inc. ("Clearview Acquisitions"), later known as Helix Wind, Corp. ("HLXW"); Pashmina Depot.com Inc. ("PASH"); and, Entertainment Art, Inc. ("EERT"), later known as Biozoom, Inc. ("BIZM") were issuers that filed periodic and annual reports with the SEC.

10.     David Lubin was an attorney licensed to practice law in the State of New York, and acted as a promoter and attorney for public companies.

11.     "Straw CEO #1" was the sister-in-law of **YELENA FURMAN**, and was listed in securities filings as an officer and director of Black Sea Oil and Clearview Acquisitions.

12.     Balfour Management Group Inc. ("Balfour Management") was a purported Florida corporation that conducted business in Miami-Dade and Broward Counties.

13.     "Straw CEO #2" was a resident of Broward County, and was listed on paperwork as the President of Balfour Management.

14.     Jordon McCarty was a resident of Broward County, and controlled Balfour Management.

15.     Steven Sanders was a resident of Lake Worth, and acted as a promoter for public companies.

16.     Daniel McKelvey was a resident of Foster City, California, and acted as a promoter for public companies.

17.     Jeffrey Lamson was listed in securities filings and corporate paperwork as the Chief Executive Officer of EERT.

18.     Medford Financial Ltd. a/k/a "Medford Financial Group" ("Medford") was a purported Belize corporation controlled by **MYRON GUSHLAK**.

19.     Sabadell United Bank, N.A. was a financial institution whose deposits were insured by the Federal Deposit Insurance Corporation.

The EDNY Criminal Case

20.     **MYRON GUSHLAK** was convicted of conspiracy to commit securities fraud and conspiracy to commit money laundering in Case No. 03-833-CR-NGG in the United States District Court for the Eastern District of New York (the "EDNY Criminal Case").    On or about November 18, 2010, the court sentenced **GUSHLAK** to 72-months imprisonment and ordered him to pay a $25 million fine due immediately.    On or about May 15, 2012, the court ordered **GUSHLAK** to pay restitution of $17,492,817.45 due immediately.

**COUNT 1**
**Conspiracy to Commit Securities Fraud**
**(18 U.S.C. § 1349)**

1.     The General Allegations section of this Indictment is re-alleged and incorporated herein by reference.

2.      From in or around November, 2006, through in or around July 2013, in Miami-Dade, Broward, and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

**MYRON GUSHLAK and
YELENA FURMAN,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with David Lubin and others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is, to knowingly execute a scheme and artifice to defraud any person in connection with any security of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934, or that is required to file reports under Section 15(d) of the Securities Exchange Act of 1934, and to obtain, by means of false or fraudulent pretenses, representations or promises, any money or property in connection with the purchase or sale of any such security, in violation of Title 18, United States Code, Section 1348(1) and (2).

## PURPOSE OF THE CONSPIRACY

3.      It was a purpose of the conspiracy for the defendants and their conspirators to unlawfully enrich themselves by making and using false and misleading statements in documents filed with the SEC and provided to others, and to conceal their control over the restricted and purported unrestricted shares of issuers.   These shares would then be sold by the conspirators at a profit.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4.      **MYRON GUSHLAK**, **YELENA FURMAN**, David Lubin, and others would recruit Straw CEOs to serve as named officers of issuers.   The conspirators would inform the straw CEOs that they would have to sign documents from time to time but would have no further role with the company, and would be paid a fixed amount when the company was later sold.   The conspirators would cause shares to be issued in the names of the straw CEOs, which shares would be labeled as control or restricted securities.   **GUSHLAK**, **FURMAN**, Lubin and other conspirators would also recruit persons to serve as straw shareholders of issuers and cause shares to be listed in the names of the straw shareholders, or separate shell companies they controlled.

5.      **MYRON GUSHLAK**, **YELENA FURMAN**, David Lubin, and others would file, and cause to be filed, periodic and annual reports with the SEC that falsely and fraudulently described the business purpose and share structure of the companies.   The securities filings also gave the false appearance that the straw CEO owned and controlled the restricted shares of the company, had reviewed and agreed with the contents of the reports, and had signed and authorized the filings.   The filings also falsely and fraudulently concealed the role of **GUSHLAK**, **FURMAN** and Lubin.   **GUSHLAK**, **FURMAN** and other conspirators would direct the straw CEOs to execute agreements and other corporate documents to make it appear that the companies were conducting business in the names of the straw CEOs, and to further conceal the role of the conspirators.

6.      **MYRON GUSHLAK**, David Lubin and others would seek to locate buyers for the issuers, specifically for the purchase and sale of all of the restricted and purported unrestricted shares.   The conspirators knew that the buyers would seek to use the shares of the issuers for pump and dump stock swindles or other manipulation schemes.   In some instances, **GUSHLAK** would seek to retain control of a portion of the purported unrestricted shares of the issuers in order to sell these shares during the subsequent pump and dump or other stock manipulation scheme that

would follow.   For some issuers, **YELENA FURMAN** would issue false and misleading press releases and coordinate the timing of these releases with **GUSHLAK**'s trading of shares.

Black Sea Oil/Clearview Acquisitions/Helix Wind

7.      Beginning in early 2006, **MYRON GUSHLAK** and David Lubin acquired control of Black Sea Oil, and installed a straw CEO.   In 2007, **YELENA FURMAN** recruited Straw CEO #1 to be the new straw CEO of Black Sea Oil.   **FURMAN**, **GUSHLAK** and Lubin would thereafter direct Straw CEO #1 to sign false and fraudulent documents, including promissory notes, to make it appear that Straw CEO #1 was the actual director and chief executive officer of the company.   These documents concealed **GUSHLAK**'s beneficial ownership and control of the company as well as the shares purportedly owned by Straw CEO #1.   **GUSHLAK, FURMAN**, and Lubin thereafter filed and caused the filing of false and fraudulent reports with the SEC, attaching as exhibits, among other things, the false and fraudulent promissory notes executed by Straw CEO #1.   The conspirators then caused additional false and fraudulent securities filings purporting to report a reverse merger of Black Sea Oil with Clearview Acquisitions. **GUSHLAK, FURMAN**, and Lubin thereafter caused filings with the SEC in the name of Clearview Acquisitions that contained false and fraudulent representations, including that straw CEO #1 had reviewed and attested to the accuracy of the information in the filings.

8.      **GUSHLAK** and Lubin travelled to Miami-Dade and Broward Counties, Florida to meet with Straw CEO #2 and Jordon McCarty, to negotiate the sale of a certain number of shares of Clearview Acquisitions, to Balfour Management.   McCarty and Straw CEO #2 made a series of substantial payments to Lubin, purportedly for the benefit of Clearview Acquisitions and Straw CEO #1.   In reality, these payments were for the benefit of **GUSHLAK** and **FURMAN.** Balfour Management then received a substantial number of shares in the entity.   Thereafter, another reverse merger was conducted and the entity became known as Helix Wind.   McCarty,

Straw CEO #2 and others working from the offices of Balfour Management Inc. in Miami-Dade and Broward Counties, offered and sold the shares they had obtained from **GUSHLAK, FURMAN,** Lubin and Straw CEO #1, to the public as purported unrestricted securities, when in fact the shares were restricted.

9.      **MYRON GUSHLAK, YELENA FURMAN,** and David Lubin thereafter caused a series of securities filings by Helix Wind through at least November 30, 2011, that described various purported corporate actions of the company, but concealed and failed to disclose: (a) the prior fraudulent share sales; (b) the prior false descriptions of the company in earlier securities filings; (c) the fraudulent share transfers to Balfour Management and Straw CEO #2; and, (d) the roles of Straw CEO #1, **GUSHLAK** and **FURMAN**.

Fraudulent Sale of EERT Shares and use in Biozoom Pump and Dump

10.     In approximately December 2008, David Lubin negotiated the sale of restricted and free trading shares of EERT with **MYRON GUSHLAK**.   Lubin and **GUSHLAK** discussed the need to not document or disclose the purchase of the free trading shares because common ownership of all the shares would cause the free trading shares to become restricted shares and lose their free trading status.   At the direction of **GUSHLAK**, Lubin drafted a false and fraudulent purchase agreement indicating that Medford would purchase the EERT restricted shares rather than all the shares.   Lubin drafted a separate set of purchase agreements to transfer the free trading shares to **GUSHLAK**, but left the counterparty, purchase price, and date blank.   This had the effect of concealing that the counterparty was in fact **GUSHLAK** or an entity he controlled, and allowed for a subsequent fraudulent sale to persons who would be in a position to use the shares for a pump and dump stock swindle.

11.     In approximately May 2009, David Lubin and **MYRON GUSHLAK** completed the sale and transfer of the EERT restricted shares to Medford.   From that point on, all of the

EERT shares were under common control and a single share certificate should have been issued showing Medford and **GUSHLAK** had control of all the shares.    At the request of **GUSHLAK**, Lubin served, on paper, as an EERT officer and director and drafted false and fraudulent securities filings for EERT.

12.    On or about November 18, 2010, **GUSHLAK** was sentenced to federal prison in the EDNY Criminal Case.    Shortly before his sentencing, **GUSHLAK** requested that Steven Sanders broker a sale of EERT to a shell buyer on his behalf because the United States District Court had frozen **GUSHLAK**'s funds and assets and he would likely be in prison soon. **GUSHLAK** directed Sanders to provide any EERT sales proceeds to his criminal defense attorneys who were assisting him in the EDNY Criminal Case, and to **YELENA FURMAN** who was his significant other and business partner.    Sanders, who had previously participated in the fraudulent sale of shares of PASH to **GUSHLAK** and Lubin, agreed.

13.    Steven Sanders recruited Daniel McKelvey, who in turn recruited Jeffrey Lamson, to assist with the sale of EERT and **GUSHLAK**'s EERT shares.    Sanders and McKelvey visited **GUSHLAK** in federal prison to discuss the details for the fraudulent transfer and subsequent sale of the EERT restricted and free trading shares to a buyer.    Sanders, **FURMAN** and Lubin communicated via email and phone calls to discuss how to keep the corporate filings of EERT current so that a sale to a buyer could take place.    For example, on or about August 10, 2011, on Form 10-Q, **GUSHLAK, FURMAN**, and Lubin caused to be filed with the SEC a statement that Medford purchased the restricted shares, including a description of how the free trading shares were purportedly issued, but omitted any description or disclosure that the restricted shares and the free trading shares were under common control of **GUSHLAK** and Medford.    Sanders, McKelvey, **FURMAN**, Lubin and Lamson worked together to have Lamson designated as the new straw CEO of EERT.

9

14.     Steven Sanders and Daniel McKelvey thereafter participated in efforts to negotiate a sale of EERT for the financial benefit of **MYRON GUSHLAK** and **YELENA FURMAN.** Sanders and **FURMAN** discussed in detail how funds from the illicit sale of EERT should be transmitted in a manner that would avoid attribution of these funds to **GUSHLAK**.

EERT Proceeds Wired to Yelena Furman and For Benefit of Myron Gushlak in Switzerland

15.     In or around July, 2012, an agreement was reached with certain shell buyers acting through Attorney B to purchase all of the restricted and purported unrestricted shares of EERT for approximately $335,000.   On or about October 22, 2012, Attorney B caused an interstate wire payment to the trust account of Attorney A, at Sabadell Bank, N.A., in Boca Raton, Florida, of approximately $324,060, representing the EERT purchase price less a deposit.    From these funds, at the direction of **MYRON GUSHLAK** and **YELENA FURMAN**, Sanders caused wire transfers of $150,000 to a bank account in Zurich, Switzerland and of $100,000 to a bank account in New York in the name of **FURMAN**.    In order to provide a false cover story in the event the authorities learned of the transfer to **FURMAN**, Sanders drafted a sham promissory note dated October 22, 2012 and provided it to **FURMAN** for her signature.   This sham promissory note falsely indicated that an entity controlled by Sanders, MBN Consulting, LLC, loaned $100,000 to **FURMAN**, and that these funds were to be repaid along with 5% per annum interest, on or before October 31, 2016.   **FURMAN** signed the sham promissory note and provided it to Sanders shortly before the $100,000 payment was made.    No principal or interest payment was ever made by **FURMAN** or anyone else in connection with the sham promissory note.

16.     The principals who purchased EERT shortly thereafter caused a reverse merger of EERT with another entity and renamed it "Biozoom, Inc.," with ticker symbol "BIZM."    Because the EERT shares had been previously sold and conveyed using false and fraudulent agreements and securities filings, the BIZM principals were in a position to engage in a pump and dump stock

10

manipulation scheme using the EERT shares they purchased from **MYRON GUSHLAK**, **YELENA FURMAN**, David Lubin and their conspirators.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-6
### Securities Fraud
### (18 U.S.C. § 1348)

1.      The General Allegations section of this Indictment is re-alleged and incorporated herein by reference.

2.      From in or around November, 2006, through in or around July, 2013, in Miami-Dade, Broward, and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

### MYRON GUSHLAK and
### YELENA FURMAN,

did knowingly and with intent to defraud, devise and intend to devise a scheme and artifice to defraud any person in connection with any security of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934, or that is required to file reports under Section 15(d) of the Securities Exchange Act of 1934, and to obtain, by means of false or fraudulent pretenses, representations or promises, any money or property in connection with the purchase or sale of any such security.

### PURPOSE OF THE SCHEME AND ARTIFICE

3.      The purpose of the scheme and artifice was for the defendants and their accomplices to unlawfully enrich themselves by using false and misleading statements in documents filed with the SEC and provided to others, to conceal their control over the restricted and purported unrestricted shares of issuers.   These shares would then be sold at a profit.

## THE SCHEME AND ARTIFICE

4.     The Manner and Means section of Count 1 of this Indictment is re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

## EXECUTION OF THE SCHEME AND ARTIFICE

On or about the dates listed below for each count, the defendants, **MYRON GUSHLAK** and **YELENA FURMAN,** for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly cause and execute the following acts as more particularly described in each count below:

| | | | |
|---|---|---|---|
| 2 | **MYRON GUSHLAK and YELENA FURMAN** | 7/18/2012 | Email from Steven Sanders to Daniel McKelvey concerning the negotiation of the sale of EERT and the shares of EERT beneficially owned by **MYRON GUSHLAK**, for approximately $335,000 |
| 3 | **MYRON GUSHLAK and YELENA FURMAN** | 10/19/2012 | EERT Form 8-K filed with the SEC purporting to describe the sale of certain shares of EERT in the name of Medford to La Mond Capital, that concealed, among other things, that the described transaction also involved the sale of all of the purported unrestricted shares |
| 4 | **MYRON GUSHLAK and YELENA FURMAN** | 10/22/2012 | Execution by **YELENA FURMAN** of a purported promissory note with MBN Consulting, LLC, related to a purported $100,000 loan. |
| 5 | **MYRON GUSHLAK and YELENA FURMAN** | 10/23/2012 | Wire transfer of approximately $100,000 from Sabadell United Bank, N.A., account ending in X-4471, to **YELENA FURMAN** in New York, New York, representing proceeds from the sale of shares of EERT |

| 6 | **MYRON GUSHLAK and YELENA FURMAN** | 10/23/2012 | Wire transfer of approximately $150,000 from Sabadell United Bank, N.A., account ending in X-4471 to CBH Compagnie Bancaire Helvetique in Zurich, Switzerland, representing proceeds from the sale of shares of EERT |

In violation of Title 18, United States Code, Sections 1348 and 2.

## COUNT 7
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

From in or around October 2010, through at least in or around January 2013, in Miami-Dade, Broward, and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

**MYRON GUSHLAK and**
**YELENA FURMAN,**

did knowingly combine, conspire, confederate and agree with each other, Steven Sanders, Daniel McKelvey, and others known and unknown to the grand jury, to knowingly conduct financial transactions, affecting interstate and foreign commerce, which involved the proceeds of specified unlawful activity, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

It is further alleged that the specified unlawful activity is wire fraud, in violation of Title 18, United States Code, Section 1343, and fraud in the sale of securities, pursuant to Title 18, United States Code, Section 1961.

13

All in violation Title, United States Code, Section 1956(h).

## COUNTS 8-9
### Money Laundering
### (18 U.S.C. § 1956(a)(1)(B)(i))

From in or around October 2010, through at least in or around January 2013, in Miami-Dade, Broward, and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

### MYRON GUSHLAK and
### YELENA FURMAN,

did knowingly conduct financial transactions, affecting interstate and foreign commerce, which involved the proceeds of specified unlawful activity, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, as more particularly described in each count below:

| | | | |
|---|---|---|---|
| 8 | **MYRON GUSHLAK and YELENA FURMAN** | 10/23/2012 | Wire transfer of approximately $150,000 from Sabadell United Bank, N.A., account ending in X-4471 to CBH Compagnie Bancaire Helvetique, representing proceeds from the sale of shares of EERT |
| 9 | **MYRON GUSHLAK and YELENA FURMAN** | 10/23/2012 | Wire transfer of approximately $100,000 from Sabadell United Bank, N.A., account ending in X-4471, to **YELENA FURMAN**, representing proceeds from the sale of shares of EERT |

It is further alleged that the specified unlawful activity is wire fraud, in violation of Title 18, United States Code, Section 1343, and fraud in the sale of securities, pursuant to Title 18, United States Code, Section 1961.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

### COUNT 10
### Obstruction of Official Proceeding
### (18 U.S.C. § 1512(c)(2))

From at least in or around October 2010, through at least on or about September 8, 2014, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**MYRON GUSHLAK and**
**YELENA FURMAN,**

did corruptly obstruct, influence, and impede, and endeavor to obstruct, influence, and impede, any pending official proceeding, to wit, to frustrate the ability of the United States District Court for the Eastern District of New York to enforce its orders in Case No. 03-833-CR-NGG, and to impair, impede and obstruct the ability of the United States Attorney's Office for the Eastern District of New York to identify, locate, trace and seize funds, assets, and accounts attributable to **MYRON GUSHLAK**.

In violation of Title 18, United States Code, Sections 1512(c)(2) and 2.

### FORFEITURE
### (18 U.S.C. § 981(a)(1)(C); 18 U.S.C. § 982(a)(1))

1.      The allegations of this Indictment are realleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which one or more of the defendants have an interest.

2.      Upon conviction of any violation of Title 18, United States Code, Section 1348 or Section 1512 or a conspiracy to commit same, as alleged in this Indictment, the defendants shall

forfeit to the United States, any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

3.       Upon conviction of any violation of Title 18, United States Code, Section 1956(a)(1)(B(i) or 1956(h) as alleged in this Indictment, the defendants shall forfeit to the United States, any property, real or personal, involved in such offense, or any property traceable to such property.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1) and the procedures set forth in Title 21, United States Code, Section 853, made applicable by Title 28, United States Code, Section 2461 and by Title 18, United States Code, Section 982(b).

                                        A TRUE BILL

                                        ‾‾
                                        FC

_____
RANDY A. HUMMEL
ATTORNEY FOR THE UNITED STATES,
ACTING UNDER AUTHORITY
CONFERRED BY 28 U.S.C. § 515

_____
JERROB DUFFY
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

MYRON GUSHLAK and
YELENA FURMAN,
    a/k/a "ELENA FURMAN,"

                    Defendants.
_____/

CASE NO. _____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division:** (Select One)

| | | |
|---|---|---|
| _X_ | Miami | _____ Key West |
| _____ | FTL | _____ WPB   _____ FTP |

New Defendant(s)            Yes _____   No _____
Number of New Defendants          _____
Total number of counts            _____

I do hereby certify that:

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.   Interpreter:      (Yes or No)        No
     List language and/or dialect      _____

4.   This case will take 20 days for the parties to try.

5.   Please check appropriate category and type of offense listed below:

(Check only one)                                          (Check only one)

| | | | |
|---|---|---|---|
| I | 0 to 5 days | _____ | Petty _____ |
| II | 6 to 10 days | _____ | Minor |
| III | 11 to 20 days | __X__ | Misdem. |
| IV | 21 to 60 days | _____ | Felony __X__ |
| V: | 61 days and over | _____ | |

6.   Has this case been previously filed in this District Court?   (Yes or No)        No
If yes:
Judge:                                    Case No. _____
(Attach copy of dispositive order)
Has a complaint been filed in this matter?     (Yes or No)        No
If yes:
Magistrate Case No. _____
Related Miscellaneous numbers: _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____ District of _____

Is this a potential death penalty case? (Yes or No)        No

7.   Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?   _____ Yes   __X__ No

8.   Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?   _____ Yes   __X__ No

_____
JERROB DUFFY
ASSISTANT UNITED STATES ATTORNEY
Court No. A5501106

*Penalty Sheet(s) attached

REV 4/8/08

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: MYRON GUSHLAK

**Case No**: _____

Count #: 1

Conspiracy to Commit Securities Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**: Twenty-Five (25) years' imprisonment

Counts #: 2-6

Securities Fraud

Title 18, United States Code, Section 1348

**\*Max. Penalty:** Twenty-Five (25) years' imprisonment as to each count

Counts #: 7

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:** Twenty (20) years' imprisonment

Count #: 8-9

Money Laundering

Title 18, United States Code, Section 1956(a)(1)(B)(i)

**\*Max. Penalty:** Twenty (20) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: MYRON GUSHLAK

**Case No**:

Counts #: 10

Obstruction of Official Proceeding

Title 18, United States Code, Section 1512(c)(2)

**\* Max. Penalty**: Twenty years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: YELENA FURMAN a/k/a "ELENA FURMAN"

**Case No**: _____

Count #: 1

Conspiracy to Commit Securities Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**: Twenty-Five (25) years' imprisonment

Counts #: 2-6

Securities Fraud

Title 18, United States Code, Section 1348

**\*Max. Penalty:** Twenty-Five (25) years' imprisonment as to each count

Counts #: 7

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:** Twenty (20) years' imprisonment

Count #: 8-9

Money Laundering

Title 18, United States Code, Section 1956(a)(1)(B)(i)

**\*Max. Penalty:** Twenty (20) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

<u>PENALTY SHEET</u>

**Defendant's Name**: <u>YELENA FURMAN a/k/a "ELENA FURMAN"</u>

**Case No**: _____

Counts #: 10

<u>Obstruction of Official Proceeding</u>

<u>Title 18, United States Code, Section 1512(c)(2)</u>

**\* Max. Penalty**: Twenty years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**