1

```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                           MIAMI DIVISION
                     CASE NO. 17-cr-20713-CMA


   UNITED STATES OF AMERICA,          Miami, Florida

            Plaintiff,                November 20, 2017

      vs.                             9:06 a.m. to 9:18 a.m.

   MYRON GUSHLAK, et al.,             Courtroom 12-2

            Defendants.               (Pages 1 to 12)
   _____

                         STATUS CONFERENCE
              BEFORE THE HONORABLE CECILIA M. ALTONAGA,
                    UNITED STATES DISTRICT JUDGE

   APPEARANCES:

    FOR THE GOVERNMENT:     JERROB DUFFY, ESQ.
                            Assistant United States Attorney
                            99 N.E. Fourth Street
                            Miami, FL 33132
                            (305)961-9273
                            Jerrob.duffy@usdoj.gov

    FOR THE DEFENDANTS:     MARK P. SCHNAPP, ESQ.
                            Greenberg Traurig, P.A.
                            333 Avenue of the Americas
                            Miami, FL 33131
                            (305)579-0541
                            SchnappM@gtlaw.com


    REPORTED BY:            STEPHANIE A. McCARN, RPR
                            Official Court Reporter
                            400 North Miami Avenue
                            Twelfth Floor
                            Miami, Florida 33128
                            (305) 523-5518
                            Stephanie_McCarn@flsd.uscourts.gov
```

**I N D E X**

**WITNESSES**

**WITNESSES FOR THE GOVERNMENT:**                                    **Page**
                                                                      --

**WITNESSES FOR THE DEFENDANTS:**                                    **Page**
                                                                      --

| EXHIBITS IN EVIDENCE | PRE | MARKED | ADMITTED |
|---|---|---|---|
| Government's Exhibit No. | -- | -- | -- |
| Defendant's Exhibit No. | -- | -- | -- |

**MISCELLANEOUS**

                                                                     **Page**
Proceedings..............................................    3
Court Reporter's Certificate......................   12

```
 1         (The following proceedings were held at 9:06 a.m.)
 2             THE COURT:  United States and Myron Gushlak.
 3             MR. DUFFY:  Good morning, Your Honor.  Jerrob Duffy
 4    for the United States.
 5             THE COURT:  Good morning.
 6             MR. SCHNAPP:  Good morning, Your Honor.  Mark Schnapp
 7    with Greenberg Traurig, on behalf of Yelena Furman.
 8             THE COURT:  Good morning.
 9             THE COURT REPORTER:  I'm sorry, what was your name
10    again?
11             MR. SCHNAPP:  I'm sorry?
12             THE COURT REPORTER:  Your name again?
13             MR. SCHNAPP:  Mark Schnapp.
14             THE COURT:  Can you spell that for her, please?
15             MR. SCHNAPP:  S-C-H-N-A-P-P.  I'm standing in for my
16    partner, Greg Kehoe, who's the lead attorney on this.
17             THE COURT:  Yes.  All right.
18             Mr. Duffy, why don't you give us the status.
19             MR. DUFFY:  Your Honor, first of all, the Codefendant,
20    Mr. Myron Gushlak, is a resident and citizen of Canada,
21    although he has apparently been involved in extensive
22    international travel.  He was released from federal custody
23    last summer, 2016, and has been residing in the Ritz Carlton in
24    Toronto, Canada, ever since, when he hasn't been traveling.
25    The Codefendant, Ms. Furman, was also residing in the Ritz
```

1  Carlton since Mr. Gushlak got out of prison until shortly
2  before her indictment in this case, when she returned to the
3  United States.  Ms. Furman, the Court will note from her
4  Pretrial Services report, reported $3,000 in a bank account,
5  made no mention of having been residing in Canada, and
6  indicated that she had a salary of $1,000 a month.
7         The status of the matter, Your Honor, is that we are
8  in the process of obtaining the -- or seeking the extradition
9  of Mr. Gushlak from Canada.  That's under way.
10        Mr. Gushlak and Ms. Furman, it is my understanding
11 are -- remain significant others and some level of
12 coordination.  Ms. Furman has bond conditions that require her
13 to -- she has a curfew, and she is residing in a New York
14 apartment, which was her residence before, while Mr. Gushlak
15 was in prison before she went to Canada to live with him.  And
16 then she has some other bond conditions that are significant,
17 from our perspective, including no contacts with witnesses,
18 which include her sister-in-law -- ex-sister-in-law, who is
19 straw CEO No. 1, in the indictment, and her brother, who is
20 also implicated in the matter.
21        So with respect to discovery, Your Honor, I had a
22 meeting with the Defendant and with Defense Counsel, Mr. Kehoe,
23 about a week and a half ago.  We went over -- without getting
24 into all the details or subject matters of the meeting, we went
25 over the key or, if you will, hot documents pertaining to this

1    matter, a description of the hot documents, e-mails, bank
2    transfers, and so forth, and provided those to the Defense.
3    And then we requested two hard drives for the discovery, one,
4    for some media, including some hard drives, that we got from
5    cooperators to be copied forensically for the Defense as well
6    as a hard drive for our production sources, and we have a
7    tentative index for the Defense.  We haven't yet produced that
8    back to the Defense, Your Honor, because there's been a delay
9    on our side.  I expect we'll have that to them by next week.
10             So that's where we are.  I anticipate that -- it's not
11   clear to me if this is a trial, Your Honor, but if it's going
12   to be a trial, I would be filing a motion, in all likelihood --
13   assuming the Defense doesn't file, I will be filing a motion
14   under the -- the joinder provision of the Speedy Trial Act, and
15   I am somewhat remiss in not doing that to this point.  But the
16   reason I haven't done it, because it wasn't clear to me the
17   disposition of the matter, and I was waiting.  I think we'll
18   know -- at least I'll know by -- I should know by the end of
19   the day tomorrow whether or not, from the Government's
20   perspective, this is a trial.
21             So that's the status from the Government's
22   perspective, Your Honor.
23             THE COURT:  And your anticipation is that Mr. Gushlak
24   will be with us when?
25             MR. DUFFY:  You know, Your Honor, that is an excellent

question, and I wish had an answer for you.  I haven't -- seems like I've had difficult countries before you, Your Honor.  I had Brazil and now Canada.

THE COURT:  But this is Canada.

MR. DUFFY:  Yes, Your Honor, it's not the same as Brazil in terms of its legal process, but it is in terms of its stringent extradition procedure.  And so the nature of the procedure, Your Honor, is not just -- in another case, we're trying to extradite someone from the United Kingdom.  Here, in Canada, we have to do the equivalent of not just an attorney's affidavit, but we have to attach each piece of evidence that supports the charges, and we have to explain each piece of evidence, and we have to have it in both English and in French.  None of this is insurmountable, Your Honor.  It's just a process because we have our Office of International Affairs, and then we have our state department legal advisors office, and they have to go to Canada, and then they ask questions, and then they come back with responses to us.

THE COURT REPORTER:  Slower, please.

MR. DUFFY:  Yes, ma'am.

So the bottom line is, is that from Canada, it is relatively slow.

What I can tell Your Honor is that Mr. Gushlak has extensive counsel, U.S. and Canadian counsel, and he is very aware of this proceeding.

```
 1            THE COURT:  And your part of the process, has that
 2   been accomplished?  Because we can say, well, it's Canada's
 3   fault.  But it's not Canada's fault until it's in Canada's
 4   hands.
 5            MR. DUFFY:  But by "your," Your Honor, I will accept
 6   that as the United States Department of Justice's process, and
 7   I would say to Your Honor, it is not finished.
 8            THE COURT:  It is not.
 9            MR. DUFFY:  It is under way.
10            THE COURT:  When can you expect your side to have done
11   its work and have delivered to Canada the necessary papers?
12            MR. DUFFY:  Yes.  Your Honor, I have a hard time
13   speaking for the Office of International Affairs.  It's very
14   difficult.  It's even difficult for me to understand it.  But I
15   would expect that by mid-December the Office of International
16   Affairs would have all of the paperwork that it needs to
17   continue the process forward.  I cannot imagine that we will
18   have Mr. Gushlak in less than 8 or 9 or 10 months.  I expect
19   that that's the best-case scenario.
20            THE COURT:  So we're going to leave him a fugitive,
21   and we're going to go forward with the Codefendant, Yelena
22   Furman; is that right?
23            MR. DUFFY:  Well, I was -- if it's a trial,
24   Your Honor, with respect to Ms. Furman, I would be filing a
25   motion to stay her matter under the Speedy Trial Act for --
```

```
 1   under the applicable 11th Circuit case law, where we do have an
 2   extra addition of a codefendant.  I anticipate that that would
 3   not be opposed, and what we would be seeking to do is really
 4   have one trial.  We have essentially, Your Honor, in this case
 5   the equivalent of the mastermind, who's in prison, and the
 6   individual outside, who bakes the cake and put the file inside.
 7   And if you -- if we severed the matter, we'd be going to trial
 8   against just the person who bakes the cake and puts the file
 9   inside, and that would be -- while we could do that if you
10   required it, that would, I think, put us at something of a
11   disadvantage, but if that's your order, that's your order.
12           THE COURT:  All right.  Thank you.
13           MR. DUFFY:  Thank you.
14           THE COURT:  Mr. Schnapp.
15           MR. SCHNAPP:  Thank you, Your Honor.  Your Honor, a
16   matter has -- I spoke to Mr. Duffy briefly about this on the
17   way in -- but a matter came to light last week.  I was going to
18   ask the Court, if the Court would have another status
19   conference in two or three weeks?  Mr. Kehoe couldn't be here
20   today.  I understand there are 5 terabytes of data, and it is
21   true that Mr. Duffy did have a reverse proffer session with
22   Mr. Kehoe, but there are still 5 terabytes of data.  That being
23   said, a matter has come to our attention that we would have
24   to -- we as a law firm have sought legal advice on and I'd
25   bring to the Court's attention; so if I could have the
```

```
 1   opportunity to do that in two or three weeks, I would
 2   appreciate that.
 3          THE COURT:  Well --
 4          MR. SCHNAPP:  It might affect -- I also can't say that
 5   we wouldn't oppose the continuance of the trial, but I think we
 6   have to resolve this other issue first.
 7          THE COURT:  Well, not knowing what the other issue is,
 8   if we're going to have a continuance of the trial, then I need
 9   the Defendant to waive her right to speedy trial, and I would
10   want her to do that in my courtroom under oath.
11          MR. SCHNAPP:  Okay.
12          THE COURT:  So we have a calendar call setting of
13   December 6th, if you all want to be here and bring her down and
14   have her waive her right to speedy trial, we can accomplish it
15   that way.
16          MR. SCHNAPP:  Okay.
17          THE COURT:  In the meantime, it stays on the current
18   trial setting.
19          MR. DUFFY:  Your Honor, under the circumstances, would
20   you expect the parties to be ready for trial under that trial
21   calendar?
22          THE COURT:  It does not appear so.
23          MR. DUFFY:  Okay.  I just wanted to make sure we --
24          THE COURT:  It does not appear.
25          MR. DUFFY:  Thank you, Your Honor.
```

```
 1            THE COURT:  If Mr. Schnapp has given me an idea of the
 2   extent of the discovery, and that neither is ready.  I can't
 3   just, sort of, not put it on for something.
 4            MR. DUFFY:  Yes, Your Honor.
 5            THE COURT:  And we have a speedy trial issue.
 6            MR. DUFFY:  Yes, Your Honor.
 7            THE COURT:  All right.  Well, thank you very much.
 8            MR. SCHNAPP:  Your Honor, I'm sorry.  It would be
 9   December 6th?
10            THE COURT:  The calendar call right now, the setting
11   is December 6th.  So that gives you about those two weeks or so
12   you wanted, Mr. Schnapp, with whatever issue it is your firm
13   has.
14            MR. SCHNAPP:  I would need two to three weeks to
15   resolve this, Your Honor.
16            THE COURT:  That --
17            MR. SCHNAPP:  I'm sorry.
18            THE COURT:  That gives you two, two weeks.
19            MR. SCHNAPP:  I --
20            THE COURT:  From today, or am I wrong?  Next Monday is
21   the 27th, the following Monday is the 4th, and the calendar
22   call is on the 6th.
23            MR. SCHNAPP:  Your Honor, I -- I assume it would.  If
24   it doesn't, I will file a motion with the Court.
25            THE COURT:  All right.  Or you let me know at calendar
```

1  call you still have an issue, but I need Ms. Furman here, if
2  she wants to waive her rights of speedy trial.
3          MR. SCHNAPP:  I'll have her here.
4          THE COURT:  Okay.  Thank you.
5          MR. SCHNAPP:  Oh.  Your Honor, one other question.  I
6  had not discussed this with Mr. Duffy, but since Thursday is
7  Friday, one of the conditions of her release is that she not
8  have contact with her own brother.  And I was hoping that the
9  Court would allow at least the family to have Thanksgiving
10 dinner together, under the condition that nothing about the
11 case be discussed.
12         THE COURT:  How does one guarantee that?  Do we have
13 Mr. Duffy present overseeing the Thanksgiving festivities?
14         MR. DUFFY:  Of all of the things you could order me,
15 Your Honor, I don't think that's one that I would be able to --
16         THE COURT:  You want to take up the invitation,
17 Mr. Duffy?
18         MR. DUFFY:  No, Your Honor.  I'm not sure --
19         THE COURT:  They'll have a plate at the table for you?
20         MR. DUFFY:  -- I would survive that meal.
21         THE COURT:  So I can't -- I don't think I could make
22 an exception, Mr. Schnapp.
23         MR. SCHNAPP:  Okay.  Well, Your Honor, I was asked by
24 the client.
25         THE COURT:  I understand.  But there's just no way to

```
 1   police that.
 2           MR. SCHNAPP:  Well, Your Honor, there's a way that it
 3   could be policed, I guess, is that -- I'm sorry.  The Court is
 4   concerned about policing the conversations between the brother?
 5           THE COURT:  How does one guarantee that?  You put them
 6   in contact for an evening or an afternoon for hours, and you
 7   say do not talk about "X."  I don't think that's appropriate.
 8           MR. SCHNAPP:  All right.  Your Honor, I was asked to
 9   ask you.
10           THE COURT:  I understand.
11           MR. SCHNAPP:  So --
12           THE COURT:  You let them know I said no.
13           MR. SCHNAPP:  I will.
14           THE COURT:  And you asked the question.  Thank you.
15           MR. SCHNAPP:  Thank you.
16       (The proceedings concluded at 9:18 a.m.)
17
                          C E R T I F I C A T E
18
19      I hereby certify that the foregoing is an
20   accurate transcription of the proceedings in the
21   above-entitled matter.
22
23   _12/18/17_        _____Stephanie A. McCarn_____
        DATE           STEPHANIE A. McCARN, RPR
24                     Official United States Court Reporter
                       400 North Miami Avenue, Twelfth Floor
25                     Miami, Florida 33128
                       (305) 523-5518
```