# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 17-CR-20713-ALTONAGA

UNITED STATES OF AMERICA,
        Plaintiff,

v.

MYRON GUSHLAK,
        Defendant.

_____/

## OBJECTIONS TO THE PRE-SENTENCE INVESTIGATION REPORT

Mr. Myron Gushlak ("Mr. Gushlak"), by and through undersigned counsel, and pursuant to Fed. R. Crim. P. 32 (f)(1) and (2), respectfully objects to portions of the Pre-Sentence Investigation Report ("PSI") filed on April 24, 2025. [ECF No. 126].

Mr. Gushlak's objections fall into three main categories. First, several paragraphs describe conduct that is not relevant to the offense of conviction and therefore falls outside the scope of sentencing conduct under U.S.S.G. § 1B1.3.

Second, some of the conduct described in the Offense Conduct has already been accounted for in a prior federal prosecution, where Mr. Gushlak was sentenced and held responsible for that same activity, and thus should not be considered in aggravation as part of the Offense Conduct narrative. *See* §1B1.3 App Note 5(c).

Despite acknowledging this in Paragraph 124, the PSI continues to incorporate that previously punished conduct into its Offense Conduct

narrative, inflating both the perceived seriousness of the present offense and Mr. Gushlak's role in it. That is improper. Mr. Gushlak cannot be sentenced twice for the same conduct, this Court should not consider this conduct as part of the Offense Conduct for this sentencing, and the Government cannot rely on conduct already adjudicated as relevant conduct in a prior sentencing to justify new enhancements in this subsequent proceeding.

Under Application Note 5(C) to § 1B1.3, conduct that has already been sentenced may not be reused at a later sentencing unless it independently qualifies as relevant conduct to the new offense under subsections (a)(1)–(3). Even if the prior conduct bears similarities to the present offense, that does not automatically authorize its reuse here. Once the court has imposed a sentence based on that conduct—as occurred in Mr. Gushlak's prior federal case—it should not be double-counted to support new enhancements or additional criminal history points in a second sentencing. That result would distort the Guidelines and contradict their structure. Accordingly, Mr. Gushlak's prior conduct should not be used to detail Offense Conduct, nor to support a role enhancement under § 3B1.1(a) or criminal history increase under Chapter 4.

Lastly, several paragraphs contain propositions not supported by a reasonable indicium of reliability. Their inclusion would also give rise to Mr. Gushlak's right to rebut the assertions, which would unnecessarily complicate and prolong this sentencing.

The objections that follow identify the specific paragraphs where these issues arise and explain why they should be revised or removed, consistent with the facts of this case and applicable law.

### 1. OBJECTION TO IDENTIFYING DATA

Mr. Gushlak objects to his listed "SSN#", which is not a Social Security Number but instead his Canadian identification number.

### 2. OBJECTION TO PARAGRAPH 22 OF THE PSI.

Mr. Gushlak objects to the inclusion of paragraph 22 on the grounds that it inaccurately and impermissibly aggregates multiple distinct fraud schemes, most of which Mr. Gushlak did not have knowledge of and that fall outside the conduct he pleaded guilty to, and presents them as "Offense Conduct" in this case. The paragraph describes at least four different schemes involving separate sets of co-conspirators, timeframes, and issuers, and refers to each as part of "the instant scheme." This assertion is not supported by an indicum of reliability, is misleading, and unfairly prejudicial. Mr. Gushlak pled guilty only to a discrete, self-contained offense involving one issuer, Entertainment Art, Inc. ("EERT"), and a narrow timeframe, as reflected in the factual proffer. In fact, if these cases were directly and entirely related, the Government would have filed notices in each case identifying them as related cases.  No such filing occurred.  The only public indication regarding any relationship is the United States Attorney's press release.  That clearly cannot form the basis for related cases.

Specifically, the only portion of Paragraph 22 that remotely relates to the conduct underlying Mr. Gushlak's conviction is the following sentence:

> **"From in or around December 2008, through at least in or around October 2012, David Lubin (Lubin) conspired with Sanders, Mirman, McKelvey, Myron Gushlak (Gushlak), Yelena Furman (Furman), and others in the instant scheme."**

Even this sentence, however, inaccurately states the scope of Mr. Gushlak's conduct and misidentifies some participants. According to the Factual Proffer [ECF No. 108], the only individual identified as acting in concert with Mr. Gushlak in the charged conduct is Yelena Furman.

Accordingly, Paragraph 22 should be revised to read as follows:

> "From in or around December 2008, through at least in or around October 2012, Myron Gushlak conspired with Yelena Furman in connection with the fraudulent sale of shares in Entertainment Art, Inc. The scheme involved the use of a nominee officer who was a shareholder, who assisted in the submission of false and misleading SEC filings, and the transfer of approximately $150,000 in proceeds overseas."

### 3. OBJECTION TO PARAGRAPHS 23-24, 25-27, AND 29-45 OF THE PSI.

Mr. Gushlak objects to paragraphs 23 through 27, 29 through 45 of the PSI on the grounds that the information contained therein is not supported by evidence, is not reasonably reliable and should be stricken. These paragraphs detail conduct by other individuals involved in distinct schemes that are factually and legally not part of the offense for which Mr. Gushlak pled guilty.

The Factual Proffer in this case [ECF No. 108] outlines a narrow securities fraud scheme involving a single shell company—EERT—and a

limited period of conduct from approximately November 2006 through July 2013. The proffer describes Mr. Gushlak's recruitment of a straw CEO and a straw shareholder to become his partner and conceal his involvement in EERT, the filing of false SEC documents, and the transfer of approximately $150,000 in proceeds from the sale of those shares. The only co-conspirator identified in the proffer is Yelena Furman. No other individuals are included in the factual basis supporting Mr. Gushlak's guilty plea.  And as noted above, no related case action was ever filed.

Including these paragraphs in the PSI improperly expands the scope of Mr. Gushlak's Offense Conduct and risks unfair prejudice by suggesting involvement in broader conspiracies for which a reasonable indicium of reliability does not exist.

Accordingly, Mr. Gushlak respectfully requests that paragraphs 23–24, 26–27, and 29 through 35, and 37–45 be stricken from the final PSI.

Mr. Gushlak objects to paragraph 25, but only to the extent that it states that "Gushlak controlled Medford Financial Group, a purported Belize corporation." This statement is not supported by evidence nor a reasonable indicium of reliability.

Finally, Mr. Gushlak objects to paragraph 36 to the extent that it does not relate to EERT and is unsupported by a reasonable indicum of reliability. Mr. Gushlak has no objection to inclusion of the final sentence of paragraph 36, to the extent that it refers to EERT.

### 4. OBJECTION TO PARAGRAPHS 46-59 OF THE PSI.

Mr. Gushlak objects to paragraphs 46 through 59 of the PSI on the grounds that, although these paragraphs reference EERT, the facts described go beyond the scope of conduct to which Mr. Gushlak admitted in his factual proffer in support of the plea to Count Six and are otherwise not supported by a reasonable indicum of reliability.

The factual proffer [ECF No. 108] makes clear that Mr. Gushlak's offense was limited to recruiting strawmen to become his partner and to conceal his involvement in EERT, filing false SEC documents, and directing the transfer of approximately $150,000 in proceeds from the sale of those shares. It does not include, for example, a broader distribution of shares, additional transactions, or other transfers implied or described in paragraphs 46–59.

While these paragraphs reference EERT, they describe a wider scope of activity and suggest a level of involvement and volume of conduct that are not reflected in the factual proffer, nor any other proffer that references or includes Mr. Gushlak. Their inclusion is not warranted, risks unfairly expanding the scope of the offense, and distorting the Court's understanding of the actual conduct at issue in sentencing.

Accordingly, Mr. Gushlak respectfully requests that paragraphs 46–59 be stricken or revised to conform strictly to the facts contained in the factual proffer.

### 5. OBJECTION TO PARAGRAPHS 61-65 OF THE PSI.

Paragraphs 61 through 65 describe a securities fraud scheme involving Black Sea Oil, Inc. (later renamed Clearview Acquisitions, and then Helix Wind, Corp.). These paragraphs allege that Mr. Gushlak, along with David Lubin and Yelena Furman, installed straw CEOs, caused the filing of false and misleading SEC documents, facilitated fraudulent share transfers to Balfour Management in Florida, and ultimately engaged in a reverse merger resulting in the public offering of improperly registered shares. The PSI further alleges that Mr. Gushlak and others concealed prior fraudulent conduct through misleading corporate filings by Helix Wind as late as 2011.

Mr. Gushlak objects to the inclusion of these paragraphs in the Offense Conduct. As the PSI itself acknowledges in Paragraph 124, this Black Sea Oil/Clearview/Helix Wind scheme was already the subject of a separate prosecution in the Eastern District of New York, Case No. 03-cr-833. Mr. Gushlak pled guilty in that case, was sentenced to 72 months in prison, and was ordered to pay both a $25 million fine and over $17 million in restitution. That matter has been fully adjudicated. Because the Black Sea Oil/Clearview/Helix Wind scheme was already addressed in the EDNY case, it should not be included in Offense Conduct. *See* § 1B1.3 App. Note 5(C).

Including previously adjudicated conduct in the offense conduct section of the PSI risks double-counting and distorts the nature and seriousness of the

offense for which Mr. Gushlak is now being sentenced. Accordingly, Mr. Gushlak respectfully requests that Paragraphs 61 through 65 be stricken.

### 6. OBJECTION TO PARAGRAPH 67 OF THE PSI.

Paragraph 67 alleges that Yelena Furman was present at Mr. Gushlak's sentencing in the Eastern District of New York in 2010, was aware that he was ordered to pay a $25 million fine, and later learned he was also ordered to pay approximately $17.4 million in restitution in that case. Mr. Gushlak objects to the inclusion of this paragraph because it has no relevance to the offense of conviction in this case, to the calculation of the applicable Guidelines, or to any of the sentencing factors under 18 U.S.C. § 3553(a). The information relates entirely to a long-resolved criminal matter in EDNY.

Accordingly, Mr. Gushlak respectfully requests that Paragraph 67 be stricken from the PSI.

### 7. OBJECTION TO PARAGRAPHS 68-73 OF THE PSI.

Mr. Gushlak objects to Paragraphs 68 through 73 of the PSI on the grounds that they significantly overstate his role in the events described, attribute unproven conduct to him, and present an inflated and unsupported narrative.

These paragraphs allege that, even while preparing to go to prison and after his sentencing in the EDNY case, Mr. Gushlak somehow continued to orchestrate the sale of EERT through multiple intermediaries, directed share transfers from behind bars, and remained at the center of a sprawling scheme

that eventually led to a pump-and-dump operation by third parties. The narrative reads as an attempt to tie Mr. Gushlak to every downstream subsequent act taken by others, regardless of whether he was involved, aware, or even free at the time. This account is based on allegations that have not been proven, are not supported by the factual proffer, do not contain a reasonable indicium of reliability, and are expressly disputed by Mr. Gushlak.

The factual proffer [ECF No. 108] makes clear that the charged conduct was limited to a discrete scheme and sale of EERT, the use of a nominee shareholder, and the transfer of approximately $150,000 in proceeds from the sale of EERT shares in 2012. The proffer does not mention Biozoom, sham promissory notes, prison meetings, or any of the individuals central to the events described in these paragraphs, nor does any other factual proffer tie Mr. Gushlak to these claims.

Accordingly, Mr. Gushlak respectfully requests that Paragraphs 68 through 73 be stricken or substantially revised to exclude any unproven, unsupported, irrelevant, or exaggerated assertions. As currently written, these paragraphs misrepresent Mr. Gushlak's role, unfairly broaden his alleged involvement, and introduce prejudicial inferences that have no place in the sentencing record.

## 8. OBJECTION TO PARAGRAPH 74 OF THE PSI.

Mr. Gushlak objects to the second portion of Paragraph 74, which states that he and Yelena Furman "corruptly obstructed, influenced, impeded, and

endeavored to obstruct, influence and impede official proceedings" in the EDNY case, and that they obstructed the government's ability to identify and seize assets.

These allegations are drawn from the Indictment in this case but remain unproven and are not supported by reasonable indicium of reliability. Mr. Gushlak categorically contests this statement and characterization. This language is not included in the factual proffer [ECF No. 108] and is not part of the offense of conviction.

Accordingly, Mr. Gushlak respectfully requests that the second portion of paragraph 74 be stricken from the PSI.

### 9. OBJECTION TO PARAGRAPHS 75-119 OF THE PSI.

Mr. Gushlak objects to paragraphs 75 through 119. These paragraphs extensively describe the conduct of numerous individuals—Ahearn, Wilson, McKelvey, Sanders, Mirman, Rose, Kass, Schneider, and others—across a wide array of alleged microcap fraud schemes involving dozens of companies, many of which have no connection to Mr. Gushlak.

These paragraphs do not allege that Mr. Gushlak participated in or was even aware of the overwhelming majority of the conduct described. He is not mentioned in these paragraphs at all. Yet the U.S. Probation Office has chosen to include more than 40 paragraphs in the PSI for the apparent purpose of suggesting that Mr. Gushlak's role in the charged offense was more central or far-reaching than it was.

That is improper. He did not admit to—and expressly contests—any involvement in the broader schemes described in paragraphs 75 through 118. These allegations have not been proven and do not bear a reasonable indicium of reliability. But even if they did, the information contained in paragraphs 75 through 118 qualitatively fall far outside the scope of relevant conduct under § 1B1.3.

Including them in the PSI unfairly inflates Mr. Gushlak's perceived role by embedding his sentencing materials within a broader narrative about a conspiracy he was not charged with leading or orchestrating or even involved in. Accordingly, Mr. Gushlak respectfully requests that paragraphs 75 through 119 be stricken from the PSI in their entirety.

**10. OBJECTION TO PARAGRAPH 120 OF THE PSI.**

Mr. Gushlak objects to paragraph 120 in its entirety. The paragraph inaccurately claims that Mr. Gushlak is responsible for a "joint conspiratorial gain" of between $550,000 and $1,500,000 and that there were "at least ten victims." That is incorrect and not supported by evidence or a reasonable indicium of reliability. The parties stipulated in the plea agreement that the gain attributable to Mr. Gushlak falls within the range of **$250,000 to $550,000**, not more. *See* [ECF No. 109, ¶ 8(b)]. The PSI provides no basis for disregarding that stipulation, and the vague reference to "ten victims" is entirely unsupported—we specifically contest that figure.

Mr. Gushlak also objects to the assertion that he "laundered funds with a value of at least approximately $250,000." This is not admitted in the plea agreement, not included in the factual proffer [ECF No. 108], and has not been proven or shown to be supported by a reasonable indicium of reliability. It should not be presented as an established fact.

Finally, the paragraph's extended discussion of the Black Sea Oil / Clearview / Helix scheme is improper and unsupported. As the PSI itself concedes in Paragraph 124, Mr. Gushlak was already held responsible for that conduct in the Eastern District of New York case and sentenced accordingly. Even paragraph 120 ultimately admits this. Reasserting that same conduct in this case—particularly when it was part of a separate, closed matter—serves only to blur the line between this offense and prior adjudicated conduct. It should not be restated here. See U.S.S.G. § 1B1.3 App. Note. 5(C).

For these reasons, Mr. Gushlak respectfully requests that paragraph 120 be stricken from the PSI or revised to align with the plea agreement and the relevant conduct admitted.

## 11. OBJECTION TO PARAGRAPH 123 OF THE PSI.

Mr. Gushlak objects to paragraph 123 on the grounds that falls outside the scope of § 1B1.3. The paragraph summarizes conduct involving McKelvey, Sanders, Mirman, Lamson, and Rose—either in schemes that the PSI elsewhere concedes Mr. Gushlak was already held responsible for in the EDNY case (*see* ¶ 124), or for conduct that has no connection to him at all. He is not

referenced in this paragraph, was not charged alongside these individuals, and he did not admit to any role in the broader fraud described here. Mr. Gushlak's involvement in the details of this paragraph is not supported by a reasonable indicium of reliability. Accordingly, this paragraph should be stricken from the PSI.

**12. OBJECTION TO PARAGRAPH 124 OF THE PSI.**

Mr. Gushlak objects to paragraph 124 to the extent it attributes to him responsibility for conduct outside the scope of the offense to which he pled guilty.

The PSI itself acknowledges that Mr. Gushlak was previously held responsible in the EDNY case (03-833-Cr-Garaufis) for the Black Sea Oil / Clearview / Helix scheme and sentenced accordingly. Mr. Gushlak is being sentenced solely for the sale of shares in EERT, as described in the factual proffer [ECF No. 108].

That said, Mr. Gushlak does not object to the inclusion of the following statement in paragraph 124: "It is noted that Gushlak was held responsible for the sale of Black Oil/Clearview/Helix in ED/NY docket number 03-833-Cr-Garaufis."

Mr. Gushlak does, though, object to the proposed four-level aggravating role enhancement under § 3B1.1(a). The PSI offers no credible basis to conclude that Mr. Gushlak was a "leader or organizer" of criminal activity involving five or more participants. He was incarcerated during much of the

relevant period, and among the three individuals charged in connection with the EERT scheme—Mr. Gushlak, Yelena Furman, and David Lubin—he was held responsible for the **lowest gain amount**: $250,000 to $550,000 [ECF No. 109, ¶ 8(b)]. By comparison, Furman was held responsible for $550,000 to $1.5 million [ECF No. 32], and Lubin for $1.5 million to $3.5 million [Case No. 17-cr-20508, ECF No. 12]. As the PSI concedes elsewhere (paragraph 36), the straw participants were not knowing participants. A more detailed and complete objection to this proposed enhancement can be found below, addressing paragraph 140.

Mr. Gushlak respectfully requests that the role enhancement and any related language in paragraph 124 be stricken.

### 13. OBJECTION TO PARAGRAPHS 125-131 OF THE PSI.

Mr. Gushlak objects to paragraphs 125 through 131 in full. These paragraphs describe the roles, backgrounds, and loss amounts of numerous individuals unrelated to Mr. Gushlak's offense conduct. They are not relevant to this sentencing and serve only to inflate the appearance of Mr. Gushlak's involvement by association. Much of the conduct described either pertains to schemes Mr. Gushlak has already been held responsible for in the EDNY case—such as the Black Sea Oil/Clearview/Helix matter—or to entirely separate conduct.

As to paragraph 125, to the extent it references Mr. Gushlak, he objects to the inclusion of the Black Sea Oil scheme, for which he was already prosecuted and sentenced in EDNY.

Mr. Gushlak also objects to the PSI's continued portrayal of Yelena Furman as someone who merely acted at his direction and had "limited understanding" of the documents and filings she was involved in. That statement is not supported by a reasonable indicium of reliability. Indeed, Furman is a highly educated professional with both a finance background, a legal background (she attended Cayman Islands Law School), as well as bachelor's and master's degree in Art Business[1]—a field in which the ability to distinguish legitimate from fraudulent provenance is foundational. She worked as the Communication's Director for Leeb Capital Management during the offense period. She has also worked as an art dealer and is currently the Director of People Operations at Elegran | Forbes Global Properties.

Ms. Furman was more Mr. Gushlak's partner than servant. Ms. Furman conducted and managed all aspects of the financial conduct and negotiated and took part in all the subsequent conduct without notifying Mr. Gushlak. The suggestion that someone with professional experience in capital markets and in identifying forgeries lacked awareness of fraudulent securities documents is not just implausible—it's absurd. It undermines the credibility of the PSI's narrative and unfairly attempts to shift responsibility onto Mr. Gushlak for

---

[1] https://yelenafurman.com/

her knowing conduct. Indeed, Ms. Furman admitted to receiving essentially the same amount of money from the sale of EERT as Mr. Gushlak.

These paragraphs should be excluded from the Offense Conduct or, at minimum, stripped of any reference to Mr. Gushlak.

### 14. OBJECTION TO PARAGRAPH 140 OF THE PSI.

Mr. Gushlak objects to paragraph 140, which recommends a four-level aggravating role enhancement under § 3B1.1(a). The PSI's conclusion that he was a "leader or organizer" of criminal activity involving five or more participants is unsupported by the record and improperly inflates his role. Unsurprisingly, both Mr. Gushlak and the Government agree that this enhancement should not apply.

First, the factual foundation of this enhancement appears to be built upon conduct that cannot be considered relevant conduct. The PSI conflates distinct conduct and improperly includes offenses for which Mr. Gushlak was already prosecuted, convicted, and sentenced in the EDNY case (03-833-cr-Garaufis). As Paragraph 124 of the PSI itself acknowledges, Mr. Gushlak was held responsible in that case for the Black Sea Oil / Clearview / Helix scheme. He is now being sentenced solely for Count Six of the current indictment, involving a single $150,000 wire transfer related to EERT.

Second, Mr. Gushlak's role in the EERT-related conduct does not justify a leadership enhancement. The Guidelines point to seven factors when determining whether a defendant is a leader or manager: (1) the defendant's

exercise of decision making authority; (2) the nature of the defendant's participation in the offense; (3) recruitment of accomplices; (4) any "claimed right to a larger share of the fruits of the crime"; (5) the defendant's degree of participation in the plan or organization of the offense; (6) the scope and nature of the criminal activity; and (7) the defendant's degree of control and authority he exercised over others. U.S.S.G. § 3B1.1, App. Note 4. There is no requirement that each factor must be present in a case for the enhancement to apply, but the defendant is required to exercise some authority in the organization and exert "some degree of control, influence, or leadership." *United States v. Martinez*, 584 F.3d 1022, 1026 (11th Cir. 2009) (quotation omitted). There is no reliable and specific evidence that Mr. Gushlak had broad decision-making authority, exerted influence or leadership, was involved in the scheme in beyond being a co-equal participant, recruited ***knowing*** accomplices, "claimed right to a larger share of the fruits of the crime," helped organize participants, or exercised control over other participants. *See, e.g.*, *United States v. Newman*, 614 F.3d 1232, 1238 (11th Cir. 2010) ("A district court's factual findings used to support a sentencing enhancement must be based on reliable and specific evidence and cannot be based on speculation."). The admission that Mr. Gushlak—from prison—asked his girlfriend to send a wire on October 20, 2022, does not, by itself, establish organizational authority, leadership or influence. Any such findings would be based on speculation.

Third, no reliable and specific evidence exists to support the proposition that Mr. Gushlak's purported leadership involved "participants" or "was otherwise extensive." A "participant" is a person who is criminally responsible for the commission of the offense. . ." § 3B1.1 App. Note 1. Someone not criminally responsible "is not a participant." *Id*. No reliable and specific evidence exists here to support the notion that the EERT strawmen that Mr. Gushlak recruited were knowing and criminally responsible (and certainly not four participants). Indeed, the EERT strawmen are not even identified. And, generally, the FBI reports in this investigation often detail the strawmen as uneducated simpletons. Paragraph 36 of this PSI buttresses this point: ". . .the signatures were placed on the documents without the knowledge or authorization of the Straw CEOs . . ."

Fourth, scoring this enhancement undermines its stated purpose. The enhancement "is included primarily because of concerns about relative responsibility." U.S.S.G. § 3B1.1, App. Notes, Background. Of the three individuals charged in connection with the EERT scheme—Mr. Gushlak, Yelena Furman, and David Lubin—Mr. Gushlak was held responsible for the lowest gain amount: $250,000 to $550,000 [ECF No. 109, ¶ 8(b)]. Furman was held responsible for $550,000 to $1.5 million [ECF No. 32], and Lubin for $1.5 million to $3.5 million [Case No. 17-cr-20508, ECF No. 12].

Furman, despite her higher loss amount, received a minor role adjustment. Ms. Furman was more Mr. Gushlak's partner than servant. Ms.

Furman attended law school, has a background in capital markets (Leeb Capital), and holds both a bachelor's and master's degree in Art Business—a field that explicitly trains individuals to assess the authenticity of documents and transactions. She currently serves as the Director of People Operations at Elegran | Forbes Global Properties. It is not credible to assert that she operated blindly at the direction of Mr. Gushlak while simultaneously attributing to her the execution of key filings, coordination of corporate transactions, and communication with third parties. Ms. Furman cannot be a sophisticated financial professional and yet also a passive subordinate whose actions were entirely controlled by someone in prison.

Indeed, Ms. Furman conducted and managed all aspects of the financial conduct and negotiated and took part in all the subsequent conduct, for which Mr. Gushlak took no part and had no knowledge. And, Lubin—an attorney—was the individual responsible for drafting legal documents and overseeing transaction structures. Yet the PSI recommends that Mr. Gushlak, who was incarcerated during much of the relevant period, be treated as the leader of both a licensed lawyer and a sophisticated co-defendant.

This recommendation collapses under scrutiny. It exaggerates Mr. Gushlak's involvement and would not be grounded in reliable and credible evidence. Both parties oppose this enhancement for good reason. Mr. Gushlak respectfully requests that paragraph 140 be stricken and the offense-level computation amended to remove the four-level enhancement.

### 15. OBJECTION TO PARAGRAPHS 146 AND 197 OF THE PSI.

Mr. Gushlak objects to paragraph 146 of the PSI, which assigns a total offense level of 22. This calculation improperly includes a four-level aggravating role enhancement under § 3B1.1(a), which Mr. Gushlak has separately objected to in response to paragraph 140.

Mr. Gushlak also objects to paragraph 197, which states that the applicable offense level is 23 and the Criminal History Category is III. First, the offense level appears to be a mathematical error: the PSI assigns a total offense level of 22 in paragraph 146 and there is no explanation for the increase to 23 here.

Second, the calculations in these paragraphs rest on conduct that has already been sentenced, an improper role enhancement (addressed above), and incorrect calculation of Mr. Gushlak's criminal history points. As explained in the objections to paragraphs 148 through 150 below, the six criminal history points assigned are based on prior sentences for conduct that is now being repackaged as relevant conduct in this case. That is not permissible under § 1B1.3 and Application Note 5(C), which prohibits double-counting previously sentenced conduct unless it independently qualifies under subsections (a)(1)–(3)—which it does not. The PSI cannot use the same conduct to both enhance Mr. Gushlak's role and increase his criminal history score. Once the criminal history calculation is corrected, Mr. Gushlak's criminal history score is zero, and his proper Criminal History Category is I.

Finally, because Mr. Gushlak's Criminal History score is zero, as explained below, he is a zero-point offender under § 4C.1.1, resulting in an additional two-level reduction to his offense level. Mr. Gushlak's correct total offense level after acceptance is, therefore, 16.

Paragraph 197 should therefore be revised to reflect a total offense level of 16 and a Criminal History Category of I. This results in a corrected Guidelines range of 21–27 months.

### 16. OBJECTION TO PARAGRAPH 148 OF THE PSI.

Mr. Gushlak objects to the assignment of three criminal history points in paragraph 148 for his prior conviction in the Eastern District of New York (Case No. 03-833-Cr-Garaufis). As the PSI itself acknowledges, the conduct underlying that conviction—specifically the Black Sea Oil / Clearview / Helix scheme—is intertwined with the offense conduct described in this case and has been repeatedly referenced throughout the PSI as relevant conduct. Although this should not be considered by the Court in aggravation of Mr. Gushlak's sentence because it is conduct associated with a prior sentence, § 1B1.3, App Note. 5(C), it can and must be considered in determining whether the past convictions score as "prior sentences" for Criminal History points under Chapter 4. U.S.S.G. § 4A1.2(a)(1).

Indeed, not only did the EDNY prosecution involve common entities, characters, and schemes, Mr. Gushlak's conduct in this case is relevant conduct to that case because Mr. Gushlak is accused in this Indictment of

committing conduct to "avoid detection or responsibility" for the EDNY case, in particular, forfeiture and restitution. *See* §1B1.3(a)(1)(B) (including as relevant conduct all acts that occurred "in the course of attempting to avoid detection or responsibility for that offense.") Here, the offense conduct began in November 2006. Factual Proffer, ECF No. 108. His EDNY sentence was imposed afterward, in November 2010. As a result, and because the EDNY conviction stems from conduct that is considered part of the instant offense under U.S.S.G. § 1B1.3, it should not be scored as a "prior sentence" under the Guidelines.

The Guidelines define a "prior sentence" as:

"Any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for **conduct not part of the instant offense.**" U.S.S.G. § 4A1.2(a)(1)

The commentary reinforces that point:

Prior Sentence.—"Prior sentence" means a sentence imposed prior to sentencing on the instant offense, *other than a sentence for conduct that is part of the instant offense*. See §4A1.2(a). A sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence *if it was for conduct other than conduct that was part of the instant offense*. *Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense* under the provisions of §1B1.3 (Relevant Conduct). U.S.S.G. § 4A1.2(a)(1) App. Note 1, (emphasis added)

Here, as the U.S. Probation Office acknowledges, the EDNY case and this case are not for "conduct other than conduct that was part of the instance offense"—they are, instead, relevant conduct of each other. Mr. Gushlak was

already held responsible for much of this conduct at his prior sentencing. It defies logic (and the express instructions in the Guidelines) to posit that the EDNY case is relevant conduct—citing it to support enhancements for loss, role, and offense characterization—but that it should be treated as a separate, independent "prior sentence" for criminal history purposes. The EDNY case partially overlaps and is directly connected to this one, and Mr. Gushlak has already been sentenced for the conduct in question. Accordingly, the EDNY case is not a "prior sentence" under § 4A1.2.

Mr. Gushlak respectfully requests that the three criminal history points assigned in Paragraph 148 be removed.

Finally, Mr. Gushlak objects to the final two sentences in paragraph 148, as they do not fully and accurately reflect the BOP infraction. Mr. Gushlak's violation in the low-security facility was an "out of bounds" violation created by an abusive BOP guard, who locked Mr. Gushlak out of an area he was supposed to return to within the facility. Mr. Gushlak did not lie or falsify any statements. That characterization is inaccurate and not supported by a reasonable indicium of reliability. The PSI should omit the final two sentences of paragraph 148.

### 17. OBJECTION TO PARAGRAPH 149 OF THE PSI.

Mr. Gushlak objects to the assignment of three criminal history points in Paragraph 149 for his 2004 New York State grand larceny conviction. That sentence, too, is not a "prior sentence" under § 4A1.2. The New York State

conviction was directly tied to part of the federal prosecution in EDNY. In fact, his guilty plea in the EDNY case incorporated the state conviction as part of the federal resolution. Documents showing that the New York State grand larceny conviction was part-and-parcel of the EDNY case, with both involving the illicit scheme regarding "Global Net Inc.," have been provided to the Probation Office in support of this objection.

Therefore, for the same reasons stated in the objection to paragraph 148, this conviction involved conduct that is relevant to the instant offense and was already accounted for in a prior sentencing. It should not be treated as a separate "prior sentence" for criminal history purposes. Mr. Gushlak was already held responsible for this conduct, and the Probation Office cannot now try to characterize it as distinct simply to increase his criminal history score. *See* 4A1.2(a)(1).

Alternatively, even if the EDNY and New York State sentences did count as a "prior sentence" under § 4A1.2—which they do not for the reasons stated above—the two sentences should not count as two, separate "prior sentences." The sentences resulted from offenses contained in the same charging incident and thus are not counted separately—they must be treated "as a single sentence." *See* 4A1.2 § (a)(2).

Accordingly, the three points assigned in Paragraph 149 should also be removed, and paragraph 149's narrative should be amended to make clear that Mr. Gushlak's offense was the same as his EDNY offense.

### 18. OBJECTION TO PARAGRAPH 150 OF THE PSI.

Mr. Gushlak objects to the calculation in Paragraph 150, which assigns him six criminal history points and a Criminal History Category of III. As explained above in the objections to paragraphs 148 and 149, the two convictions forming the basis of that score involved conduct that is relevant to each other *and* the instant offense, and have thus already been accounted for. Neither past sentence should be treated as a "prior sentence" under the Guidelines. *See* 4A1.2(a)(1). Once those improper points are removed, Mr. Gushlak's criminal history score is zero, and his Criminal History Category should be I, not III.

Finally, Mr. Gushlak objects to the final two sentences of the narrative in paragraph 148 because they are not supported by a reasonable indicium of reliability. The final two sentences should be omitted.

### 19. OBJECTION TO PARAGRAPH 162 OF THE PSI.

Mr. Gushlak objects to the second sentence of paragraph 162. Mr. Gushlak never owned a house in Miami, Florida. He has never owned real estate in the United States. The information in that sentence is wrong, not supported by a reasonable indicium of reliability, and should either be omitted or edited to reflect that the referenced house was his friend's house.

### 20. OBJECTION TO PARAGRAPH 183 OF THE PSI.

The last sentence of paragraph 183 relays information from a 2009 report, stating that Mr. Gushlak declined to execute release forms to authorize

U.S. Probation to request verification of self-reported employment information and did not provide his own documentation. This recounting is inaccurate and not supported by indicium of reliability. Mr. Gushlak's employment corroboration was complicated by the fact that his EDNY case had been kept under seal for years while he cooperated. His EDNY attorney was in touch with that Probation Office about his employment documentation. Mr. Gushlak never refused to provide employment information.

**WHEREFORE,** for the reasons outlined above, Mr. Gushlak respectfully requests that the Court direct the U.S. Probation Office to correct the Pre-Sentence Investigation Report (PSI) as detailed above.

Respectfully submitted,

**STUMPHAUZER KOLAYA
NADLER & SLOMAN, PLLC**
2 South Biscayne Boulevard, Suite 1600
One Biscayne Tower
Miami, FL 33131
Telephone: (305) 614-1400
Facsimile: (305) 614-1425

*/s/ Michael B. Nadler*
Michael B. Nadler
Fla. Bar No. 51264
mnadler@sknlaw.com

*/s/ Francis D. Murray*
Francis D. Murray
Florida Bar No. 108567
fmurray@sknlaw.com

*/s/ Juan J. Michelen*
Juan J. Michelen
Fla. Bar No. 92901
jmichelen@sknlaw.com

## **CERTIFICATE OF SERVICE**

I certify that on May 27, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, causing a copy to be served on counsel of record.

*/s/ Michael B. Nadler*
Michael B. Nadler