UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-20713-CR-ALTONAGA

UNITED STATES OF AMERICA

v.

MYRON GUSHLAK,

    Defendant.
_____/

### UNITED STATES' RESPONSE TO MYRON GUSHLAK'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this Response to Defendant Myron Gushlak's ("Gushlak") Objections to Presentence Investigation Report ("PSI") [ECF No. 128]. As addressed below, the United States respectfully submits that that majority of Gushlak's objections to the PSI should be overruled as thy are relevant to the Court fashioning an appropriate sentence.

**I.   BACKGROUND**

This case is a small part of a larger securities fraud scheme involving numerous defendants and shell companies. Named the "Shell Factory Fraud" investigation, it involved the fraudulent creation of at least 37 shell companies; fraudulent registration of these companies with the SEC; fraudulently-obtained approval for over-the-counter trading of shares of the companies in the penny stock markets through false statements and deceit; creation of a secretly controlled class of free trading shares for the companies; the subsequent fraudulent sale of these companies, including the secretly controlled class of free trading shares to other criminal actors ("shell buyers") at a profit; use of illicit private placement arrangements and open market stock trades; subsequent false filings with the SEC concealing the terms of the sale to the shell buyers; and,

the use of these companies subsequently by the shell buyers for pump and dump schemes or other stock swindles. This pattern of criminal activity was repeated numerous times for approximately five years. Apart from Gushlak, twelve other defendants have been convicted in the Southern District of Florida in connection with the "Shell Factory Fraud" investigation: Yelena Furman, Case No. 17- 20713-CR-Altonaga; James Schneider ("Schneider"), Case NO. 17-20712-CR-Moreno; John Ahearn and Andrew Wilson, Case No. 17-20883-CR-Williams; David Lubin, Case No. 17-20508-CR-Cooke; Sheldon Rose and Ian Kass, Case No. 16-20706-CR-Martinez; Steven Sanders and Alvin S. Mirman, Case No. 16-20572-CR-Altonaga; Daniel McKelvey and Jeffrey Lamson, Case No. 16-20546-CR-Scola; and, Delaney Equity Group LLC, Case No. 18-20336-CR-Altonaga. These convicted defendants included two attorneys who practice securities law (Lubin and Wilson), a registered securities representative (Kass), a stock transfer agent (Ahearn), a securities broker-dealer (Delaney Equity Group LLC), an accountant (Lamson), and five stock promoters (Sanders, McKelvey, Mirman, Rose, and Furman). While all these facts surrounding the Shell Factory Fraud scheme are relevant to show the scope of law enforcement's investigation and the prosecution of these criminal actors, Gushlak's involvement is narrower.

Schneider was the only defendant who went to trial, taking place in November and December 2018, and testimony from this trial implicated Gushlak in the sale of Entertainment Art, Inc. ("EERT"). Overall, the testimony regarding Gushlak was limited over the course of the 8-day trial that included the testimony of 16 Government witnesses. Four witnesses testified regarding Gushlak – Michael Vax, Steven Sanders, David Lubin, and Yelena Furman. Additionally, Schneider testified on his own behalf and was questioned regarding Gushlak, which he testified he never met Gushlak, or knew Gushlak was incarcerated at the time Schneider

2

handled the closing of EERT. *See* Transcript of Jury Trial Proceedings [Schneider ECF No. 170][1] pages 8:12-14; 11:17-12:1; 60:7-61:6.

Vax was a securities fraudster who admitted to several illegal pump and dump schemes, and testified that he knew Gushlak. Vax testified that he and Gushlak were involved in a pump and dump securities fraud scheme that occurred sometime in the 2000's, and he last saw Gushlak around 2009 – 2010 in Moscow. *See* Transcript of Jury Trial Proceedings [Schneider ECF No. 183] pages 29:25-30:21; 86:20-87:15. Vax was not involved in the instant conduct surrounding the illegal sale of EERT.

Sanders was a securities broker who held a Series 7 license to be a stockbroker and sell securities, and he participated in numerous fraudulent securities fraud schemes, including the illegal sale of EERT. Sanders testified that Gushlak was a friend of his, and that he and Daniel McKelvey assisted Gushlak in selling EERT. *See* Transcript of Jury Trial Proceedings [Schneider ECF No. 183] pages 129:13-130:7. Gushlak was incarcerated at the time and Sanders and McKelvey visited Gushlak in prison in 2012. *Id*. Sanders testified that he knew Gushlak couldn't receive money in his own name, so he assisted in the sale of EERT, sending Gushlak's portion of $150,000 to his attorney in Switzerland and another $100,000 to Furman. *Id*. at pages 130:8-132:12.

Furman testified that she and Gushlak worked together and also had a romantic relationship. *See* Transcript of Jury Trial Proceedings [Schneider ECF No. 185] pages 158:10-16. Furman stated she was with Gushlak in New York when he was sentenced to federal prison and

---

[1] Docket entries in *United States v. James M. Schneider*, Case No. 17-20712-CR-Moreno (S.D. Fla.) are denoted as "Schneider ECF No."

she would regularly visit Gushlak in prison. *Id*. at pages 158:23-159:13. Furman admitted to participating in the illegal sale of EERT with Gushlak, and while he was in prison she handled his finances and assisted in the sale of EERT with Sanders and Mirman. *Id*. at pages 159:14-164:12. Furman was paid $100,000 for the sale of EERT, and she further admitted to participating to additional securities frauds with Sanders apart from EERT while Gushlak was in prison. *Id*. There is no evidence showing Gushlak knew about Furman's participation in the additional fraud between her and Sanders. Regarding EERT, Furman testified she assisted with bookkeeping and other activities while Gushlak was in prison. *Id*. at pages 165:21-166:1.

Gushlak's involvement was limited compared to these numerous other individuals charged in the Shell Factory Fraud scheme. Gushlak fraudulently sold a shell company named EERT for $335,000 to other criminal actors. Gushlak did so while in prison in the Eastern District of New York for conspiracy to commit securities fraud and conspiracy to commit money laundering. Since Gushlak was in custody, he needed the assistance of his fiancée Furman, who was also charged in this case. Other individuals such as Steven Sanders, Alvin Mirman, and David Lubin, participated in the fraudulent sale of EERT. The overall fraud scheme in the PSI is beneficial to properly understand the extent of Gushlak's involvement and properly rule on the legal objections to the role enhancement and fashion a sentence that is sufficient, but not greater than necessary to achieve the goals of Title 18, United States Code, Section 3553(a).

## II. ARGUMENT

The Court's factual findings for purposes of sentencing may be based on, among other things, undisputed statements in the PSI or evidence presented during the sentencing hearing. *United States v. Polar*, 369 F.3d 1248, 1255 (11th Cir. 2004) (quoting *United States v. Saunders*,

318 F.3d 1257, 1271 n. 22 (11th Cir. 2003)). When a defendant challenges one of the bases of his sentence as set forth in the PSI, it is the Government's burden to establish a disputed fact by a preponderance of the evidence. *United States v. Martinez*, 584 F.3d 1022 (11th. Cir. 2009). The Government may do so by presenting reliable and specific testimony. *United States v. Bernardine*, 73 F.3d 1078 (11th. Cir. 2009) (reliable hearsay permissible). The evidence provided in discovery, the court records for other defendants, and Schneider's trial, is consistent with the PSI's summary of the facts. Gushlak asserts several objections, most of which refer to the facts in the PSI related to the overall Shell Factory Fraud scheme. Additionally, there are two categories of legal objections that affect the guidelines: a four-point leader/organizer role enhancement and criminal history.

**A. Gushlak's Objections to the Offense Conduct and Relevant Conduct**

    **i. The Objections to the Shell Factory Fraud Scheme and Objections to Paragraphs 22-27, 29-45, 46-59, 68-73, and 75-119, Should be Overruled**

The factual general objections to the inclusion of the overall Shell Factory Fraud Scheme should be overruled. Gushlak objects on relevancy grounds. While it is true that he did not participate in the Shell Factory Fraud aside from the fraudulent sale of EERT, the larger fraud scheme is relevant to show the scale of the fraud scheme, the roles of the different participants, and most importantly, assists in fashioning a sentence that avoids unwarranted sentencing disparities among these defendants.

    **ii. The Objections to Paragraphs 61-65, the Black Sea Oil/Helix Wind Fraud, Should be Overruled in Part and Sustained in Part**

The United States agrees with Gushlak and Probation that this conduct was taken into consideration when Gushlak was sentenced in the Eastern District of New York. This specific

5

securities fraud scheme, although referenced in the Indictment, should not be considered as offense conduct or relevant conduct. If anything, it should be taken into account as part of the Gushlak's criminal history. For these reasons, the Court should sustain the objection as this being included in the offense conduct, or overruled and included as part of Gushlak's criminal history, not offense conduct.

### iii. The Objection to Paragraph 67, Yelena Furman Attending Gushlak's Sentencing, Should be Overruled

Gushlak argues that the undisputed fact that Furman attended Gushlak's sentencing in the Eastern District of New York should be removed from the PSI on relevance grounds. This fact is relevant since Gushlak went to prison and coordinated the sale of EERT with Furman due to his incarceration. For these reasons, the objection should be overruled.

### iv. The Objection in Paragraph 120, Loss Amount, Should be Overruled

The PSI correctly states and explains the loss amount attributable to Gushlak and Furman. Additionally, this paragraph further clarifies why Gushlak is not being held accountable for a higher loss amount, and instead being held accountable for the appropriate loss amount of $250,000 to $550,000 as reflected in PSI Paragraph 137. For these reasons, the objection should be overruled.

### v. The Objections to Paragraphs 123 and 125-131, the Role of Gushlak and the Shell Factory Fraud Defendants, Should be Overruled

The objections to the scope and role of Gushlak and the other Shell Factory Fraud defendants should be overruled. Although Gushlak's role was limited to EERT, these paragraphs are relevant for the legal objection to the role enhancement assessed in the PSI. These paragraphs show the Court the larger scope of the Shell Factory Fraud – which Gushlak correctly points out

he did not participate in – and gives the Court a clearer perspective to compare Gushlak with others who were given role enhancements. For these reasons the Court should overrule this objection.

### vi. Miscellaneous Objections in Identifying Data and Paragraphs 162 and 183

Gushlak makes several objections regarding his Identifying Data, whether he owned a home in the Miami area, and whether he declined to execute forms in the Eastern District of New York. The United States respectfully defers to U.S. Probation to resolve these matters.

### B. Gushlak's Objections to Role Assessment and Offense Level Computation; Paragraphs 124, 140, 146, and 197

The United States, consistent with the plea agreement, is not seeking a role enhancement for Gushlak. The PSI recommends a four-level enhancement under a § 3B1.1(a), which is applicable if the defendant was a leader or organizer, and the criminal activity involved five or more participants or was otherwise extensive. PSI Paragraph 123 names the four individuals in the Shell Factory Fraud Scheme who were assessed a role enhancement: Sheldon Rose, Steven Sanders, Alan Mirman, and Daniel McKelvey. These role enhancements were three-level manager/supervisor enhancements, not four-point leader/organizer enhancements, and were also agreed-to in their respective plea agreements. Each of these individuals were properly assessed a role enhancement, as the PSI notes their extensive efforts in carrying out numerous pump and dump schemes over several years that resulted in a loss amount range of $3.5 million dollars to $9.5 million dollars. PSI ¶ 123.

These manager/supervisor defendants participated in the scheme as follows: McKelvey was involved in 19 fraudulent companies (PSI ¶ 83); Sanders was involved in 19 fraudulent companies (PSI ¶ 84); Mirman was involved in 27 fraudulent companies (PSI ¶ 85); and Rose was involved with 17 fraudulent companies (PSI ¶ 86). Rose, Sanders, Mirman, and McKelvey, would

7

recruit approximately 24 nominee shareholders for each shell company that were purportedly unaffiliated with the company, and would assign an equal number of shares to each nominee shareholder. PSI ¶ 90. In reviewing the offense conduct of each defendant, the plea agreements that were executed, and the overall scope and role of each defendant, Gushlak's conduct in the sale of EERT does not warrant a role enhancement.

### C. Gushlak's Objections to Criminal History and Guidelines Calculation; PSI Paragraphs 148-150 and Paragraph 197

Undersigned counsel for the United States has spoken with U.S. Probation regarding Gushlak's objection to the criminal history computation and the New York state conviction. It appears from the information U.S. Probation has gathered, that Gushlak's New York state conviction involves separate conduct from his federal conviction, supporting the criminal history computation. The United States does agree with Gushlak that if the state court conviction involved conduct that is part of the instant offense, then the Guidelines do not allow the state conviction to count for an additional three points and he would be a criminal history category of II.

Gushlak's additional argument that his Eastern District of New York case should not count for three points is disingenuous. Gushlak cannot have it both ways by arguing the Black Oil/Helix Wind fraud was separate and accounted for in New York, but also part of a continuing fraud scheme that ties in the EERT sale that occurred two years after his sentencing while he was serving his EDNY sentence. The Black Oil/Helix Wind fraud and the sale of EERT are two separate fraud schemes. The 2010 EDNY sentencing never referenced or took into consideration EERT, which occurred after in 2012. The PSI properly assesses three criminal history points for this conviction, and that objection should be overruled.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully asks that the Court agree with the United States' responses to overrule or sustain Gushlak's objections to the PSI.

                                                Respectfully submitted,

                                                HAYDEN P. O'BYRNE
                                                UNITED STATES ATTORNEY

By:   */s/ Manolo Reboso*
        Manolo Reboso
        Assistant United States Attorney
        Florida Bar No. 75397
        99 Northeast 4th Street
        Miami, Florida 33132-2111
        Tel: (305) 961-9318
        Fax: (305) 530-7976